IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN A. CLEMENT,<br>        Plaintiff | )<br>)<br>)   C.A. 16-117 Erie |
| vs. | )<br>)   Magistrate Judge Baxter<br>) |
| THE ROMAN CATHOLIC DIOCESE<br>OF ERIE, et al,<br>        Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION[1]

**SUSAN PARADISE BAXTER**, United States Magistrate Judge

      Plaintiff Kathleen A. Clement ("Plaintiff") filed this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951 *et seq*. Plaintiff alleges that she was subject to an "offensively sexual hostile work environment" and constructively discharged from her position as a Facilitator of Religious Education Programs at three parishes in the Roman Catholic Diocese of Erie. ECF No. 11. Plaintiff names as defendants to this action St. Joseph and St. Michael the Archangel Parishes (the "Parish Defendants"), and the Diocese of Erie (the "Diocese"); and claims that each failed to address ongoing inappropriate sexual conduct directed at her by parish priest Fr. Daniel Kresinski.

      The Diocese and Parish Defendants have filed motions to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 21; ECF No. 22. The Diocese contends that Plaintiff has failed to state a claim against it because she has not alleged facts establishing that the Diocese was her

---
[1] All parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. *See* 28 U.S.C. § 636 *et seq*. (ECF Nos. 24, 25 and 26).

1

employer or that it employed Fr. Kresinski. The Parish Defendants contend that because Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") identifying only the Diocese as her employer, Plaintiff has failed to exhaust administrative remedies against St. Joseph or St. Michael. The motions have been fully briefed by the parties, and are ripe for disposition. *See* ECF Nos. 32, 33, 47, 48. For the following reasons, the motions are denied.

**Background and Relevant Procedural History**

Plaintiff's Complaint alleges that after experiencing sexual harassment and retaliation in the course of her employment, she filed a timely charge with the EEOC and the Pennsylvania Human Relations Commission ("PHRC"). The Diocese has submitted a copy of the EEOC charge to the Court as an exhibit to the motion to dismiss, and it has been reviewed by the Court as a document forming an integral part of Plaintiff's claim.[2] ECF No. 21-1. Plaintiff's charge identifies the Diocese as her Employer/Respondent, references the Parish Defendants, and states as follows:

> During my employment with Respondent, I was subjected to a sexually hostile work environment based on my gender. In March 2013, Fr. Daniel Kresinski became the parish priest at St. Joseph Parish and St. Michael the Archangel Parish. When I would meet with Fr. Kresinski in his office alone, he would cup his hand under his scrotum and pull his scrotum up toward his waist. He did this every time I had to meet with him alone and would do it 6 or more times during each meeting. In or about August 2013, I reported the sexual harassment to Joseph Street, Respondent's Director of Religious Education. Mr. Street did

---

[2] In reviewing a Rule 12(b)(6) motion, a district court generally may not consider matters outside of the complaint. *Fed. R. Civ. P. 12(d)*. An exception exists with respect to: (i) exhibits that are attached to the complaint; (ii) matters of public record; and, (iii) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the document is integral to or explicitly relied upon in the complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

> nothing to address my complaint and advised me to "politely resign." I then contacted Monsignor Smith, Director Priest Personnel, and met with him and Monsignor Kaza of St. Tobias, on September 24, 2013. During that meeting, I advised Monsignor Smith that I could not continue to work with Fr. Kresinski due to sexual actions. At the meeting, Monsignor Smith told me I was creditable. On October 1, 2013, Monsignor Smith met with Fr. Kresinski, who admitted to touching himself in my presence. Respondent did nothing to address Fr. Kresinski's inappropriate sexual harassment and insisted that I continue to work with him. I therefore was forced to tender my resignation on October 3, 2013.
>
> After I resigned, I contacted and met with … [Most Reverend Lawrence T.] Persico, [Bishop of the Roman Catholic Diocese of Erie]. Bishop Persico indicated that he did not want me to go to the press with my complaint and asked me to sign a non-disclosure statement.

*Id.* Plaintiff alleges that "the EEOC issued a Determination that there is reasonable cause to believe that Defendants are an integrated enterprise/single employer and that Plaintiff was sexually harassed and constructively discharged." ECF No. 11, p.2. Plaintiff timely filed the instant action after receipt of the agency Notification of Dismissal.

In support of her claims against the Diocese as her "employer," Plaintiff's Complaint alleges facts indicating the supervisory involvement of Diocesan personnel investigating her sexual harassment claims. Plaintiff further alleges facts suggesting the unified operation of the Diocese and its parishes as a "single employer." In particular, Plaintiff alleges:

> Defendants have a high degree of operational entanglement between them.
>
> Defendants have unity with respect to ownership, management and business functions because, among other things:
>
> a. Clement's supervisory chain of command was split between Fr. Daniel Kresinski (the parish priest at Defendant St. Michael and Defendant St. Joseph) and Joseph Street (the Director of Religious Education at Defendant Diocese);
>
> b. Defendant Diocese indicated that it properly had control over both Fr. Kresinski and the handling of Clement's complaint of sexual harassment;

> c. Defendant Diocese owns all of the physical property and buildings of its parishes, including Defendant St. Joseph and Defendant St. Michael;
>
> d. Defendant St. Joseph and Defendant St. Michael jointly contributed funds to pay Clement her salary; and
>
> e. Defendant Diocese handled Clement's constructive discharge.
>
> Defendants present themselves as a single company such that third parties dealt with them as one unit in situations including but not limited to the following:
>
> a. Defendants' employee handbook is created, promulgated and enforced by Defendant Diocese;
>
> b. Defendant Diocese provided Clement a required "application for driving privileges" in connection with the execution of her job duties;
>
> c. Defendant Diocese's policies required Clement to attend a workshop entitled, "For the Protection of Children" in connection with the execution of her job duties; and
>
> d. Defendant Diocese required Clement to complete its Application for Volunteers with Children/Youth in connection with the execution of her job duties.

*Id.* at pp. 3-4. In addition, Plaintiff points to Diocesan assessments of required parish financial contributions and Diocesan fiscal oversight of its parishes as evidence of financial entanglement adding to the inference that Defendants operate as a single company. *Id.*

Plaintiff contends that her factual allegations are sufficient to state a claim against the Diocese and to conclude that notice to the Diocese identifying the involved parishes was sufficient to exhaust all required administrative remedies as to each Parish.

**Standard of Review**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all of the well-pleaded allegations of the complaint must be accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (specifically applying *Twombly* analysis beyond the context of the Sherman Act).

A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) *citing Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. *Twombly*, 550 U.S. at 555, *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556, *citing 5C Wright & Miller, Federal Practice and Procedure § 1216*, pp. 235–236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery

5

will reveal evidence of the necessary element.'" *Id.* at 234, *quoting Twombly*, 550 U.S. at 556 n. 3.

**Single Employer Status**

Title VII prohibits discrimination based on race, color, religion, sex, or national origin by an "employer." 42 U.S.C. § 2000e-2. An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each weekly day in which of twenty calendar weeks in the current or preceding calendar year…." 42 U.S.C. § 2000e(b).

The Diocese argues that it should be dismissed from this action because Plaintiff is employed solely by the Defendant Parishes. The Parish Defendants argue that they are entitled to dismissal because individually, they do not employ the required minimum fifteen individuals. All parties agree that under certain circumstances, a court may combine nominally separate entities as a single employer to meet the requirements of Title VII and that when consolidated, they share all liabilities. *See* ECF No. 21, p. 11; ECF No. 22, p. 9; ECF No. 32, p. 3, *citing Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 84 (3d Cir. 2003).

The United States Court of Appeals for the Third Circuit has explained that a court should consider two companies to be a "single employer" where, in relevant part, the "two ... entities' affairs are so interconnected that they collectively caused the alleged discriminatory employment practice." *Id.* at 85-86. A determination as to whether two entities are sufficiently interconnected requires an "intentionally open-ended, equitable inquiry," which focuses "on the degree of operational entanglement—whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." *Id.* at 87

Relevant operational factors include (1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other. *Id.*; *see also Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 422 (E.D. Pa. 2016). No single factor is dispositive. *Nesbit*, 347 F.3d at 87.

The Diocese and Parish Defendants contend, albeit without the benefit of discovery, that Plaintiff, "has failed to demonstrate and cannot [demonstrate] that there is a degree of unity between the Erie Diocese and the Parishes with respect to ownership, management (both directors and officers), and business functions (*e.g.*, hiring and personnel matters)" such that Defendants may be considered a single employer.[3] ECF No. 22, p. 14. *And see* ECF No. 21, p.

---

[3] The Court acknowledges the Diocese's objection to the application of the single employer theory as a violation of the First Amendment, which, it contends, protects "a religious institution's right to decide matters of faith, doctrine and church governance." ECF No. 22, p. 8, n.1, *citing Petruska v. Gannon University*, 462 F.3d 294, 306 (3d Cir. 2006). In the context of Title VII, however, the United States Supreme Court has noted that the ministerial exception, while broad, may not be implicated in employment claims unrelated to hiring and termination decisions.

> The case before us is an employment discrimination suit brought on behalf of a minister, challenging her church's decision to fire her. Today we hold only that the ministerial exception bars such a suit. We express no view on whether the exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers. There will be time enough to address the applicability of the exception to other circumstances if and when they arise.

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.,* 565 U.S. 171, 196 (2012). Here, Plaintiff's Title VII claim is based upon alleged persistent and pervasive sexual harassment. The Court notes, without deciding the issue at this early juncture, that actions predicated upon sexual misconduct have examined the interrelationship of diocese and parish for purposes of the imposition of liability without violating First Amendment strictures, because such conduct has been determined to be outside the realm of protected religious activity. *See, e.g., Doe v. Liberatore,* 478 F. Supp. 2d 742, 772 (M.D. Pa. 2007)(Plaintiff's breach of fiduciary duty claim against priest and the Diocesan Defendants did not offend the First Amendment, even where claim required examination of the issues of overmastering influence, and unfair advantage and whether the Diocesan Defendants failed to provide and maintain a safe environment for Plaintiff to participate in church activities.); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 966 (9th Cir.2004) (holding the ministerial exception did not apply to sexual harassment or its retaliation, but allowing damages only for emotional distress and reputational harm that are recoverable under Title VII). Additionally, the Supreme Court's decision in *Hosanna-Tabor* makes clear that the application of the ministerial exception requires a factual inquiry to determine if the employee qualifies as a "minister." *Hosanna–*

12. This fact-intensive inquiry is widely recognized as inappropriate at the motion to dismiss stage, and indeed, may not be appropriate for summary judgment where discovery has not yet occurred. *See e.g.*, *Hayes v. Waddell & Reed, Inc.*, 2013 WL 5434139, at *9 (W.D. Pa. Sept. 26, 2013), *citing Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997); *Thompson v. U.S. Airways, Inc.*, 717 F. Supp.2d 468, 479 (E.D. Pa. 2010); *Krasner v. Episcopal Diocese of Long Island*, 431 F. Supp.2d 320, 325 (E.D.N.Y. 2006)(summary judgment motion denied where discovery not yet conducted and Plaintiff stated she was directed to perform duties by the Diocese; that she attended training offered by the Diocese; that she participated in the Diocese group plan health insurance; and that the Diocese controlled aspects of her compensation, hours, and job duties); *DeLa Cruz v. Piccari Press*, 521 F. Supp.2d 424, 430-431 (E.D. Pa. 2007); *Valesky v. Aquinas Acad.*, 2011 WL 4102584, at *10 (W.D. Pa. Sept. 14, 2011)(Diocese and Catholic high school one entity for Title IX purposes regardless of separate operating trusts so as to ensure artificial distinctions do not defeat statutory anti-discriminatory intent).

At this early stage of litigation, Plaintiff points to the dual chain of command over her position, the requirement that she adhere to the Diocesan employee handbook, the Diocese's approval of her application for driving privileges in connection with the performance of her job, and the intermingling of business and financial operations between the Diocese and its parishes.[4] These allegations rise well beyond the level of "threadbare recitals of the elements of a cause of action" that fail the *Twombly/Iqbal* test, and raise a reasonable expectation that discovery could

---

*Tabor*, 565 U.S. at 190-92; *Hough v. Roman Catholic Diocese of Erie*, 2014 WL 834473, at *5 (W.D. Pa. Mar. 4, 2014).

[4] The Court also notes the Diocese's position in *Persico v. Sebelius*, 919 F.Supp.2d 622, 628 (W.D. Pa. 2013), wherein it described itself as consisting "of 177 parishes serving a thirteen-county region," educating over 7,500 student through its numerous elementary, middle and secondary schools, and operating a self-insured health plan providing health insurance coverage to approximately 803 employees, "including those employed directly by the Diocese as well as those employed by the various parishes, schools and charitable agencies of the Diocese." This description appears to reflect their posture as a single entity. ECF No. 22, pp. 14-15.

reveal evidence of interconnection such that the single employer theory of Title VII liability is appropriately imposed. Accordingly, the motion to dismiss filed on behalf of the Diocese is denied. Further, the Parish Defendants' motion to dismiss based upon Title VII's employee numerosity requirement is denied as this issue also relies upon a factual determination of the propriety of pooling employees to support a Title VII claim.

**Exhaustion of Administrative Remedies**

The Parish Defendants alternatively contend that they are entitled to dismissal from this action because Plaintiff failed to name either entity as an employer in her EEOC charge. Her failure to do so, they argue, constitutes a failure to exhaust her available administrative remedies against them and bars pursuit of this action against both parishes. ECF No. 21. Plaintiff responds that the Parish Defendants had actual notice of the charge and there is sufficient commonality of interest between the parishes and the Diocese so as to impute notice, such that she is not precluded from maintaining her current action.

Generally, a Title VII action may only be brought against a party previously named in an EEOC action. *Schafer v. Bd. of Educ. of the Sch. Dist. of Pittsburgh, Pa.*, 903 F.2d 243, 251 (3d Cir.1990). Administrative exhaustion is a jurisdictional prerequisite to suit, and parties must exhaust all administrative remedies against the named parties before bringing suit. *McLaughlin v. Rose Tree Media Sch. Dist.*, 1 F.Supp.2d 476, 481 (E.D.Pa.1998). There is a recognized exception to this exhaustion requirement when a party unnamed in the EEOC complaint (1) received notice of the EEOC complaint, and (2) there is a shared commonality of interest between the named and unnamed parties. *Schafer*, 903 F.2d at 252; *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir. 1980). Because resolution of these issues will require development

and review of a factual record not properly before the Court at this preliminary stage, the Parish Defendants' motion to dismiss is denied. An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge